IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| NATIONAL BANKERS TRUST CORPORATION, a Tennessee corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 12-2268-STA-tmp |
| PEAK LOGISTICS LLC, an Indiana limited liability company; SUMMITT TRUCKING LLC, an Indiana limited liability company; PACER TRANSPORTATION SOLUTIONS INC., an Ohio corporation; ZAPPOS.COM, INC., a Delaware corporation; and DECKERS OUTDOOR, INC.; | ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| ANDY TRANSPORT, INC.; | ) ) | |
| Third Party Defendant. | ) | |

**ORDER DENYING DEFENDANT DECKERS OUTDOOR, INC.'S MOTION TO DISMISS**

Before the Court is Defendant Deckers Outdoor, Inc.'s ("Deckers") Motion to Dismiss for Failure to State a Claim (D.E. # 79), filed December 21, 2012. Plaintiff National Bankers Trust Corporation ("NBT") filed a Response (D.E. # 82) on December 28, 2012. For the reasons given herein, the Court hereby **DENIES** Deckers' Motion to Dismiss.

1

## BACKGROUND

For purposes of the instant Motion, the Court accepts the following as true.[1] NBT is engaged in the business of factoring for motor carriers. (First Am. Compl. ¶ 17, D.E. # 64.) NBT purchases its clients' accounts receivables (owed by shippers or consigners using the clients' carrier services) at a discount and takes a security interest in its clients' assets (including present and after-acquired accounts receivables) securing the purchase price. (*Id.*) NBT remits a portion of the purchase price, known as the "advance rate," at the time of purchase, reserving a portion of the purchase price as further security. (*Id.* ¶¶ 18-19.) NBT releases the reserved funds to its clients once the shipper pays the account. (*Id.* ¶ 19.)

Defendant Pacer Transportation Solutions Inc. ("Pacer") brokered loads of shoes Defendant Zappos.com Inc. ("Zappos") purchased from various suppliers. (*Id.* ¶ 26.) Pacer contracted with Defendant Summitt Trucking, LLC ("Summitt") to carry some of these loads. (*Id*. ¶ 25.) Defendant Peak Logistics, LLC ("Peak") would then, in turn, broker some of these Summitt loads to other carriers. (*Id.* ¶ 24.)

On August 15, 2011, NBT and Third-party Defendant Andy Transport, Inc. ("Andy Transport") entered into a factoring agreement. (*Id.* ¶ 20.) In October 2011, Peak began brokering shipments of Zappos' shoes to Andy Transport. (*Id.* ¶ 21.) These loads included shipments of shoes Zappos purchased from Deckers. (*Id.* ¶ 22.) Pursuant to their factoring agreement, Andy Transport sold the receivables generated by these brokered shipments to NBT. (*Id.* ¶ 23.) NBT promptly notified Peak of NBT's purchase of the Andy Transport receivables and of Peak's obligation to pay NBT. (*Id.*)

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court will take the well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Saylor v. Parker Seal Co*, 975 F.2d 252, 254 (6th Cir. 1992).

On November 23, 2011, and January 5, 2012, Andy Transport hauled two separate loads of Zappos' shoes shipped from Deckers' Caramillo, California facility. (*Id.* ¶¶ 29, 37.) Peak brokered both loads to Andy Transport. (*Id.*) However, unnamed persons absconded with both loads before they reached their destination. (*Id.*)

On January 17, 2012, after NBT made numerous inquiries to Peak regarding payment on open Andy Transport receivables, Peak informed NBT of the thefts and that it had two insurance claims for lost cargo pending. (*Id.* ¶ 39.) Peak further informed NBT it was holding payment on Andy Transport receivables due to the pending claims. (*Id.*) Included in these receivables were payments on twenty-four bills of lading naming Deckers as shipper or consignor. (*Id.* ¶¶ 47-48.)[2] These bills of lading incorporated the terms of the Uniform Bill of Lading. (*See, e.g.*, Ex. to Compl. at 6, D.E. # 1-9.)

NBT commenced this diversity action by filing a Complaint (D.E. # 1) in this Court on April 4, 2012, alleging causes of action against Peak, Summitt, Pacer, and Zappos for failure to pay a sworn account, fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and replevin. NBT then filed a First Amended Complaint (D.E. # 64) on October 18, 2012, adding a cause of action for failure to pay a sworn account against a new defendant, Deckers. Deckers moves the Court here to dismiss NBT's sole claim against Deckers for failure to pay a sworn account. Deckers argues the bills of lading NBT submits to the Court indicate Deckers was not liable for shipping charges. (Mot. to Dism. at 3-5.) NBT argues in response a shipper-consignor is primarily and presumptively liable for freight charges on a bill of lading

---

[2] The Court notes Deckers identifies Paragraphs 47 and 48 of the Amended Complaint as containing "conclusory allegations" the Court should disregard. (Mot. to Dism. at 4, D.E. # # 79-1.) The Court reads this as objecting to the statement "Therefore, Deckers is primarily liable for the freight charges on these twenty-four (24) invoices[,]" and not to the remainder of Paragraphs 47 and 48.

3

unless they elect the bill of lading's non-recourse provisions, which Deckers did not do. (Resp. to Mot. to Dism. at 4-5, D.E. #81.)

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted."[3] When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[4] However, the Court will not accept legal conclusions or unwarranted factual inferences as true.[5] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[6] Ordinarily, a reviewing court may not consider matters outside the pleadings on a motion to dismiss under Rule 12(b)(6).[7] However, "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."[8]

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[9] Although this standard does not require "detailed factual allegations," it does require more than "labels and

---

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Saylor*, 975 F.2d at 254.

[5] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[6] *Wittsock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[7] *Rondingo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

[8] Fed. R. Civ. P. 10(c).

[9] Fed. R. Civ. P. 8(a)(2).

conclusions" or "a formulaic recitation of the elements of a cause of action."[10] In order to survive a motion to dismiss, the plaintiff must allege facts, if accepted as true, sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

## ANALYSIS

In order to decide whether NBT states a claim against Deckers, the Court must determine the meaning of the terms in the bills of lading at issue. "The bill of lading is the basic transportation contract between the shipper-consigner and the carrier; its terms and conditions bind the shipper and all connecting carriers."[13]

> The consignor, being the one with whom the contract of transportation is made, is originally liable for the carrier's charges and unless he is specifically exempted by the provisions of the bill of lading, or unless the goods are received and transported under such circumstances as to clearly indicate an exemption for him, the carrier is entitled to look to the consignor for his charges.[14]

Deckers argues the terms of the bills of lading at issue clearly and unambiguously demonstrate Deckers was not liable for the freight charges. Deckers premises this argument on two notations on the face of each bill of lading: Deckers checked the "3rd Party" box in the

---

[10] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[11] *Twombly*, 550 U.S. at 570.

[12] *Iqbal*, 556 U.S. at 678.

[13] *S. Pac. Transp. Co. v. Comm'l Metals Co.*, 456 U.S. 336, 342 (1982) (citing *Tex. & Pac. R. Co. v. Leatherwood*, 250 U.S. 478, 481 (1919)).

[14] *S. Pac. Transp.*, 456 U.S. at 343 (quoting *C-F-G Grain Co. v. Atchison T. & S. F. R. Co.*, 351 I.C.C. 710, 712 (1976) (quoting *In re Bills of Lading*, 52 I.C.C. 671, 721 (1919), modified, 64 I.C.C. 357 (1921), further modified, 66 I.C.C. 63 (1922))).

5

"Freight Charge Terms" section, and the section "Third Party Freight Charges Bill To" indicates billing to Zappos care of Pacer. NBT counters the terms contained in the "Freight Charge Terms" and "Third Party Freight Charges Bill To" sections have no effect on Deckers' presumptive liability for shipping charges under the bills of lading.

The Court holds the terms contained in the "Freight Charge Terms" and "Third Party Freight Charges Bill To" sections do not explicitly release Deckers from primary liability for shipping charges on the bills of lading. "[A]bsent an express statement on the face of the bill of lading or a separate agreement allocating liability, the shipper-consignor remains presumptively liable for all lawful freight charges."[15] The Uniform Bill of Lading provides a method for a consignor to release itself from primary liability for shipping charges:

> [t]he consignor *shall be liable* for the freight and all other lawful charges, *except* that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges.[16]

The Sixth Circuit has not discussed the effect of directions to bill third parties on the face of a bill of lading. However, a district court in the Western District of Michigan has confronted such an issue, as have the Fifth and Ninth Circuit Courts of Appeals.

In *CSX Transportation, Inc. v. Meserole Street Recycling*, the Western District of Michigan examined an argument similar to that advanced by Deckers. There, the defendants in an action for shipping charges on bills of lading claimed listing a third party in the section

---

[15] *CSX Transp., Inc. v. Meserole St. Recycling*, 618 F. Supp. 2d 753, 766 (W.D. Mich. 2009) (citing *S. Pac. Transp.*, 456 U.S. at 342-43; *Oak Harbor Freight Lines, Inc. v. Sears Roebuck Co.*, 513 F.3d 949, 954-55 (9th Cir. 2008)).

[16] 49 C.F.R. pt. 1035 app. B, § 7 (emphasis added). A signature in the space provided on the face of the bill of lading stating the carrier shall not make delivery without requiring payment of freight charges from the consignee is known as the "non-recourse" or "Section 7" election.

marked "Send Freight Bill To" released the defendants from liability for shipping charges.[17] The *Meserole* court reasoned "federal regulation of interstate rail shipments was intended to establish 'clear, easily enforceable rules for liability.'"[18] The court further noted "[t]he uniform bill of lading in general, and Section 7 in particular, loses its utility if . . . the carrier cannot rely on unambiguous representations contained on the face of the bill in determining how to allocate liability for freight charges."[19] Finding the language merely indicated the carrier expected payment from either the consignee or the shipper, and did not explicitly release the shipper from liability, the court held the "'simple glossation' of the 'Send Freight Bill To' designation . . . insufficient to relieve [the defendants] of liability."[20]

In *Missouri Pacific Railroad Co. v. Center Plains Industries, Inc.*, the Fifth Circuit considered a case where the consignor had typed "Send Freight Bill To" and the address of a third party on the face of the bill of lading.[21] The *Missouri Pacific* panel noted "the transfer of [the shipper's liability for payment] must be clearly established by the agreement between the parties or the circumstances surrounding the receipt and transportation of the goods."[22] As a general matter, a shipper designates such a transfer by "exercising the privilege made available by Section 7 of the Contract Terms and Conditions printed . . . on the bill of lading by the simple

---

[17] *Meserole*, 618 F. Supp. 2d at 768.

[18] *Id.* (quoting *CSX v. Novolog Bucks Co.*, 502 F.3d 247, 257 (3d Cir. 2007)).

[19] *Meserole*, 618 F. Supp. 2d at 768 (citing *Mo. Pac. R.R. Co. v. Cent. Plains Indus., Inc.*, 720 F.2d 818, 819 (5th Cir. 1983)).

[20] *Id.* at 768-69 (quoting *Mo. Pac. R.R.*, 720 F.2d at 819).

[21] *Mo. Pac. R.R.*, 720 F.2d at 819.

[22] *Id.* (citing *S. Pac. Transp.*, 456 U.S. at 342).

expedient of marking the Section 7 box[.]"[23] As a result, the Fifth Circuit held the "Send Freight Bill To" language, on its own, insufficient to "transfer the obligation of payment."[24]

In *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, the Ninth Circuit examined the case of shipper liability when the bill of lading stated "Freight Terms: PREPAID" and instructed the carrier to send freight bills to a third party.[25] The Ninth Circuit found under the default terms of the Uniform Bill of Lading, the shipper is liable for freight charges unless the shipper marks the bill of lading "nonrecourse."[26] The Ninth Circuit noted that their holding did not preclude an allocation of responsibility by separate agreement, but in the absence of such an agreement the default terms of the Uniform Bill of Lading controlled.[27]

In the instant case, the bills of lading explicitly incorporate the default terms of the Uniform Bill of Lading. Although the bills of lading contained a checked-off box indicating third-party billing and directed Andy Transport was to bill Zappos care of Pacer, they also included a box where Deckers could make a Section 7 election by signature. Although Deckers argues it did not make the Section 7 election because doing so would not reflect the agreement between the parties, the Court finds this line of reasoning unpersuasive. Deckers states the agreement between the parties was that Andy Transport would pick up the loads of shoes from

---

[23] *Id.* (citing *S. Pac. Transp.*, 456 U.S. at 342).

[24] *Id.*.

[25] *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 953 (9th Cir. 2008).

[26] *Id.* at 954-55 (citing *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 478-79 (9th Cir. 2000); *Toyo Kisen Kaisha v. W.R. Grace & Co.*, 53 F.2d 740, 742 (9th Cir. 1931)).

[27] *Id.* at 955 ("As a consequence, in the absence of a separate agreement, Sears is liable for the freight charges on the outbound bills of lading.").

8

Deckers, carry them to Zappos, then bill freight charges to Zappos care of Pacer. Since the Section 7 election language mandates the carrier collect payment at delivery, Deckers maintains making this election would run contrary to the agreement. While a narrow reading of the terms of the Section 7 box would indicate the consignee was to tender cash upon delivery, a more reasonable construction allows for a shipper to receive payment in the form of a promise to pay—exactly the arrangement Deckers seems to assert.[28] Since the weight of authority directs the Court to the finding that, absent a Section 7 election, language on the face of a bill of lading indicating a third party is to receive billing does not relieve a consignee of primary liability on the bill of lading, the Court cannot find NBT fails to state a claim against Deckers. Therefore, the Court **DENIES** Deckers' Motion to Dismiss.

## **CONCLUSION**

Because Deckers has not shown the bills of lading expressly relieve Deckers of liability, the Court finds NBT states a claim against Deckers in its Amended Complaint. Therefore, the Court hereby **DENIES** Deckers' Motion to Dismiss.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: April 8, 2013.

---

[28] The Court notes the existence of a separate agreement between Andy Transport, Deckers, and Zappos might constitute a defense to liability. *See Oak Harbor,* 513 F.3d at 949 ("[I]f parties enter into a contract before preparing a bill of lading, and there is 'an irreconcilable repugnancy between the prior written contract and the bills of lading, that conflict would have to be resolved in favor of the former.'") (quoting *Toyo Kisen Kaisha*, 53 F.2d at 742). However, that issue is not before the Court on this Motion to Dismiss.