IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| NATIONAL BANKERS TRUST CORPORATION, ) <br> a Tennessee corporation, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PEAK LOGISTICS LLC, an Indiana limited liability ) <br> company; SUMMITT TRUCKING LLC, an Indiana ) <br> limited liability company; PACER ) <br> TRANSPORTATION SOLUTIONS INC., an Ohio ) <br> corporation; ZAPPOS.COM, INC., a Delaware ) <br> corporation; and DECKERS OUTDOOR, INC.; ) <br> ) <br>     Defendants, ) <br> ) <br> v. ) <br> ) <br> ANDY TRANSPORT, INC.; ) <br> ) <br>     Third Party Defendant. ) | No. 12-2268-STA-tmp |

**ORDER DENYING DEFENDANT PEAK LOGISTICS LLC's MOTION TO DISMISS**

Before the Court is Defendant Peak Logistics, LLC ("Peak") Motion to Dismiss (D.E. # 105) filed April 22, 2013. Plaintiff National Bankers Trust Corp. ("NBT") filed a Response (D.E. # 107) on April 30, 2013. Peak filed a Reply (D.E. # 113) on May 14, 2013. After seeking and receiving leave of the Court, NBT filed a Sur-reply (D.E. # 119) on May 28, 2013. For the reasons given herein, the Court **DENIES WITHOUT PREJUDICE** Peak's Motion to Dismiss.

1

## BACKGROUND

For purposes of the instant Motion, the Court accepts the following as true.[1] NBT is engaged in the business of factoring for motor carriers. (First Am. Compl. ¶ 17, D.E. # 64.) NBT purchases its clients' accounts receivables (owed by shippers or consigners using the clients' carrier services) at a discount and takes a security interest in its clients' assets (including present and after-acquired accounts receivables) securing the purchase price. (*Id.*) NBT remits a portion of the purchase price, known as the "advance rate," at the time of purchase, reserving a portion of the purchase price as further security. (*Id.* ¶¶ 18-19.) NBT releases the reserved funds to its clients once the shipper pays the account. (*Id.* ¶ 19.)

Defendant Pacer Transportation Solutions Inc. ("Pacer") brokered loads of shoes Defendant Zappos.com Inc. ("Zappos") purchased from various suppliers. (*Id.* ¶ 26.) Pacer contracted with Defendant Summitt Trucking, LLC ("Summitt") to carry some of these loads. (*Id*. ¶ 25.) Peak would then, in turn, broker some of these Summitt loads to other carriers. (*Id.* ¶ 24.)

On August 15, 2011, NBT and Third-party Defendant Andy Transport, Inc. ("Andy Transport") entered into a factoring agreement. (*Id.* ¶ 20.) In October 2011, Peak began brokering shipments of Zappos' shoes to Andy Transport. (*Id.* ¶ 21.) These loads included shipments of shoes Zappos purchased from Defendant Deckers Outdoor, Inc. ("Deckers") (*Id.* ¶ 22.) Pursuant to their factoring agreement, Andy Transport sold the receivables generated by these brokered shipments to NBT. (*Id.* ¶ 23.) NBT promptly notified Peak of NBT's purchase of the Andy Transport receivables and of Peak's obligation to pay NBT. (*Id.*)

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court will take the well-pleaded factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Saylor v. Parker Seal Co*, 975 F.2d 252, 254 (6th Cir. 1992).

2

On November 23, 2011, and January 5, 2012, Andy Transport hauled two separate loads of Zappos' shoes shipped from Deckers' Caramillo, California facility. (*Id.* ¶¶ 29, 37.) Peak brokered both loads to Andy Transport. (*Id.*) However, unnamed persons absconded with both loads before they reached their destination. (*Id.*)

On January 17, 2012, after NBT made numerous inquiries to Peak regarding payment on open Andy Transport receivables, Peak informed NBT of the thefts and that it had two insurance claims for lost cargo pending. (*Id.* ¶ 39.) Peak further informed NBT it was holding payment on Andy Transport receivables due to the pending claims. (*Id.*)

NBT commenced this diversity action by filing a Complaint (D.E. # 1) in this Court on April 4, 2012, alleging causes of action against Peak, Summitt, Pacer, and Zappos for failure to pay a sworn account, fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, and replevin. Peak filed a Third-party Complaint (D.E. # 37) on May 25, 2012, asserting causes of action against Andy seeking a declaratory judgment that Andy be required to indemnify Peak for NBT's suit and alleging causes of action against Andy under theories of fraudulent representation, negligence, and breach of contract. NBT then filed a First Amended Complaint (D.E. # 64) on October 18, 2012, adding a cause of action for failure to pay a sworn account against a new defendant, Deckers. Pacer, Peak, Summit, and Zappos filed Answers to the First Amended Complaint (D.E.s # 67, 69, 68, and 70 respectively) on November 8, 2012. Andy filed an Answer (D.E. # 71) to Peak's Third-party Complaint on November 12, 2012.

On December 21, 2012, Deckers filed a Motion to Dismiss (D.E. # 79), arguing NBT failed to state a claim against it upon which the Court could grant relief. The Court denied Deckers' Motion to Dismiss in an Order (D.E. # 101) dated April 8, 2013. Fourteen days later, on April 22, 2013, Peak filed the present Motion to Dismiss, asking this Court to dismiss NBT

3

and Andy's claims against Deckers, Pacer, and Zappos. Peak argues that a contract between it and Andy ("the Broker-Carrier Agreement") bar Andy (and by extension NBT) from recovering as against Deckers, Pacer, and Zappos. NBT argues that Peak does not have standing to assert affirmative defenses on behalf of Deckers, Pacer, and Zappos; that Peak's motion is untimely under the Federal Rules of Civil Procedure; and that Peak's motion is without merit substantively because a contract between Peak and NBT cannot alter contractual rights between NBT and Deckers, Pacer, and Zappos.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted."[2] When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[3] However, the Court will not accept legal conclusions or unwarranted factual inferences as true.[4] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[5] Ordinarily, a reviewing court may not consider matters outside the pleadings on a motion to dismiss under Rule 12(b)(6).[6]

> However, a court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to a defendant's motion to dismiss so long as they are referred to in the complaint and

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Saylor*, 975 F.2d at 254.

[4] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[5] *Wittsock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[6] *Rondingo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

are central to the claims contained therein,' without converting the motion to one for summary judgment."[7]

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[9] In order to survive a motion to dismiss, the plaintiff must allege facts, if accepted as true, sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

## ANALYSIS

Peak moves the Court to dismiss NBT and Andy's claims against Deckers, Pacer, and Zappos. Before proceeding to the merits of the parties' arguments, however, the Court determines this Motion is untimely.[12]

---

[7] *Rondingo, L.L.C. v. Tw.p of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) (alteration in original).

[8] Fed. R. Civ. P. 8(a)(2).

[9] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[10] *Twombly*, 550 U.S. at 570.

[11] *Iqbal*, 556 U.S. at 678.

[12] Although NBT raises a standing issue in its Response, the Court may decline to decide a standing issue when deciding on non-merits grounds. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999).

Peak moves the Court pursuant to Rule 12(b)(6) for failure to state a claim. However, Rule 12(b) unequivocally states "[a] motion asserting any of these defenses must be made *before pleading* if a responsive pleading is allowed."[13] An answer is a pleading.[14] To move for dismissal under Rule 12(b)(6), the movant must request judgment either in a pre-answer motion or in the answer itself.[15] Peak filed an Answer more than five months before filing the instant motion to dismiss.[16] By the plain language of Rule 12(b), Peak cannot file a motion to dismiss pursuant to Rule 12(b)(6) at this late date.

Ordinarily, when presented with a motion to dismiss asserting a failure to state a claim after filing an answer properly preserving such a defense, the Court will construe the motion to dismiss as one for judgment on the pleadings under Rule 12(c).[17] However, the Court cannot do so here. Rule 12(c) allows a party to move for judgment on the pleadings "after the pleadings are closed[.]"[18] The pleadings are not closed until every defendant has filed an answer.[19] As Deckers has not yet filed an answer in this matter, the Court does not consider the pleadings closed, and a motion for judgment on the pleadings would be premature.

---

[13] Fed. R. Civ. P. 12(b).

[14] Fed. R. Civ. P. 7(a)(2).

[15] *Huisjack v. Medco Health Solutions, Inc.* 496 F. Supp. 2d 859, 861 (S.D. Ohio 2007).

[16] *See* Answer to Amended Compl., D.E. # 69.

[17] *Huisjack*, 496 F. Supp. 2d at 861. *See also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.")

[18] Fed. R. Civ. P. 12(c).

[19] *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc. Emps. Health & Welfare Plan*, No. 2:08-cv-1140, 2009 WL 5247486, at *1 (S.D. Ohio Dec. 31, 2009) (citing *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005)).

Therefore, the Court is left on the one hand to consider a motion to dismiss untimely filed after Peak has filed an answer, and on the other to consider a motion for judgment on the pleadings filed before the close of pleadings.  Either way the Court chooses to construe Peak's Motion, it is procedurally deficient.  That being the case, the Court finds it appropriate to **DENY** Peak's Motion to Dismiss **WITHOUT PREJUDICE** as to the substantive issues.

## CONCLUSION

Because Peak filed this Motion to Dismiss after Peak filed an Answer to the operative Complaint, the Court determines the Motion to Dismiss is untimely.  Because Decker's has not yet filed an answer, the pleadings remain open, and the Court may not construe Peak's Motion to Dismiss as a Motion for Judgment on the Pleadings.  Therefore, the Court **DENIES** Peak's Motion to Dismiss **WITHOUT PREJUDICE** as untimely.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  June 17, 2013.